Good morning to the justices of the honorable panel. I appreciate the opportunity to be here this morning. This is a case that deals with the fraud waiver contained in 8 U.S.C. 1227 A1H. It is plaintiff's position, excuse me, it is the respondent's position that, respondent below, the petitioner's position that the Board of Immigration's de novo exercise of discretion to sustain the government's appeal commits legal error in the way that it fails to fully consider the positive factors in plaintiff's favor in making a discretionary decision. So are you challenging the balancing of the evidence that was before the board in the weighing of the factors? Is that what you're asking us to review? No, that would be impermissible. But what is permissible is to look at the factors that, is to look at what's stated in the board's actual decision and to note that they've ignored favorable factors that were considered by the immigration judge in making her contrary opinion. And what did the court say that indicated as a matter of law, which is what you're asking, that they ignored the favorable factors? Where is the language from the court that basically said that where we could find as a matter of law that there was a violation? Well, yes. They simply recite that we recognize the positive equities. And then they recite some of them. I'm looking at AR 3 and 4, the bottom of 3 and the top of 4. And then in the next paragraph they cite a list of some of the negative factors, and apparently they focused on the continuing nature of the fraud and found that it didn't counterbalance the positive factors. So I'm trying to figure out what the legal challenge is here, because it really seems to me like you're asking us to rebalance the factors. And if that's the case, then I don't think we have jurisdiction to do that. Understood. And the petitioner concedes that this court doesn't have jurisdiction to rebalance factors. But if you look to the, let me find, it's the Jung v. Holder. This court held in 2011 that a failure to fully and fairly consider all the relevant positive factors is legal error. But how can we conclude that they didn't when they said that they did? I mean, it would be one thing if the decision was completely silent and they simply said we choose in the exercise of our discretion not to grant relief here. But when they specifically cite the positive and negative factors and then focus on the continuing nature of the fraud as the reason why they don't think relief is warranted, how have they failed to discharge their statutory duty? Right. It's a good point. The petitioner's response to that would be that it's essentially a nod at, well, yes, we looked at positive factors, we looked at those family ties, but there's a number of other relevant positive factors that are not even mentioned in the opinion. And for them to simply say we considered everything but not to state that in the opinion. I thought our cases say that the board doesn't have to tick off every single factor. They just have to say enough so that we can tell as the reviewing court on the petition for review that they did, in fact, do what they're supposed to do in exercising their discretion. There are cases that hold that. Yes, sir. But you're saying they didn't satisfy the standard that we've set for them? I'm saying that it's almost pretextual what they said is we recognize positive equities, but really there's little evidence that they, in fact, did. But what you're really doing is asking that we remand to have them rebalance them and then rebalance them and hopefully in the favor of your client. But because you're not saying they didn't balance them, right? Yes, Your Honor. But that brings me really to my second point, which I think actually has more force, which is that their sole reliance on the scope of the fraud, really what it boils down to is the marriage fraud, and as further outlined in Petitioner's brief, that really vitiates the whole point of the fraud waiver. That argument would resonate with me if the only thing we had in the record was the initial fraudulent marriage in order to enter. But I'm still looking at page 4. And they focus upon the fact that it's essentially that the respondent continued to perpetrate the fraud for a period of years by establishing fake bank accounts, filing a joint petition to remove conditions on his residence, and he supported that with fraudulent letters from friends and family members claiming that it really was a bona fide marriage even though he'd never lived with her. And the board basically said, look, this person has been lying for years and is continuing to do it. Why can't the board focus on that as a significant negative factor that outweighs the positive? Thank you, Justice Tolman. And I'd like to address that. And first of all, I think the board, with respect to the board, they overstate what the record will bear. There was several letters submitted by one cousin in support of the I-751, the petition to remove conditions just under two years after the initial admission entry into the U.S. And then there was a fraudulent joint bank account. And then there's the actual fact of the I-751, which is claims, continues to claim that the marriage is true. But if we look at the statutory scheme. The condition that he's seeking to remove is the two-year rule, right? Right, yes. Okay. And so if we look at the scheme, that's exactly it. It's a two-year scheme where you're allowed entry, and everyone concedes that the initial entry was fraudulent. There's no question about that. And you're allowed entry, but only for two years. And this is with all entries, fraudulent, non-fraudulent. Any entry based on marriage has a two-year condition, essentially. And you have to come back in two years and say, yeah, we're still married and get the condition removed. So if he does not, or he or anyone in his position does not file that petition, then we're not even here, because the fraud. So are you asking us for a declaration that this was really just one fraud as opposed to a continuing series of fraudulent acts over a period of years? Yes, Judge. In essence, we are asking that, because as the statutory scheme is set out governing marriage, immigration visas based on marriage, that 751 petition to remove the condition is an essential part of the scheme. In other words ‑‑ I guess what's bothering me is that, you know, if it were just a matter of going back to the BCIS and saying I want the condition removed now because my loving wife and I have been enjoying our marriage here in the U.S. for two years, but he did more than that. I mean, he actually went out and he procured additional false evidence. Right. And it's a good point, Judge, but he had to, because the way that these things are ‑‑ Well, he had to if he wanted to succeed in convincing the BCIS not to declare the marriage as shameful. Yes, Judge, but that goes back to your hypothetical that you just raised. If it was just a matter of him going to CIS and saying, oh, my loving wife and I are still together, that is no ‑‑ as a functional matter, no petition to remove conditions never succeeds just on the basis of filing a form. But, you know, at this point in this conversation, we're really back down into the weeds of questioning the balancing in which the board engaged, and I don't think we get to do that. I mean, once they're into the evidence, if they think it's important and we think, well, it's not as that important, that doesn't matter. We can't tell them that they've misevaluated it. Thank you, Judge Fletcher. And my point is not precisely that, and perhaps I'm drawing the distinction not well, but it's not that they're not balancing correctly. It's that if they focus solely on that marriage fraud and the filing of the 751, then the fraud waiver that's at issue here will never succeed. It's a dead letter for petitioners in this situation. Okay. I think we've got the point. You've got about 30 seconds left. Let's hear from the government, and we'll make sure you get a chance to respond. I appreciate it. Thank you. Good morning, Your Honor. May it please the Court, Margo Carter for the United States Attorney General. The Court should dismiss this petition for review for lack of jurisdiction. The Immigration and Nationality Act, as amended by the Real ID Act of 2005, explicitly prohibits the review of the discretionary denial of a waiver. And in this case, the petitioner's waiver was denied as a matter of discretion based on the extensive marriage fraud that he committed. The petitioner in his brief to this Court raises no constitutional issue nor any genuine legal issue that would preserve this Court's jurisdiction. Instead, the petitioner casts the weighing of the factors as a legal issue, but ultimately that is exactly what has been determined to be a discretionary finding. And the petitioner has done is basically claim from reviewing the record that the determination of the fraud and whether or not it was sufficient for a waiver, the way they did it was really a nullity. And basically they're saying that it doesn't respect the law or they didn't respect the law that allowed for a waiver. Well, and to the extent that the petitioner argues that the statute would effectively be vitiated, that argument was really disposed of by the United States Supreme Court's unanimous decision in INS versus Yang, which I think was cited certainly in our brief and perhaps in their brief as well. And ultimately in Yang, the Supreme Court held that the statute would only be vitiated if any fraud, no matter how minor, would cause a denial of a waiver. And in this case, this wasn't a minor fraud. This was a fraud that was perpetrated over a period of more than a decade. It involved the submission of fraudulent documents. The petitioner's wife, who submitted the I-130 on his behalf, actually altered her naturalization application or naturalization certificate to indicate that she was single at the time of her naturalization in order to continue to perpetrate this fraud. There were fraudulent documents. Your theory is that if it's a short-term, rather inept fraud, that's excusable. But if it's a successful fraud, we've got problems. Exactly. And at the end of the day, it's still a discretionary determination. But if in the case of an exceptionally minor fraud, in every minor fraud case, the waiver were still being denied as a matter of discretion, then you could make more of an argument about vitiation. But that's not what's happening here. Let me ask you a question about the citizenship issue. And the Court said or held, as part of its order, that he was and is a citizen of China. But the record doesn't establish that as a matter of law. And I say that only because they were relying on his attorney. And the circumstances under which that took place seemed to me that they — you could at least argue that he didn't understand what was said because he disputed that. And I don't see a discussion of that in the order where that could be found as a matter of law. It seems to me that there is at least the possibility, if the Court was relying on that statement made by his attorney that he was a citizen and he is not, which is what he claimed, there's a problem with the order. Well, ultimately, that issue has not been raised anywhere in the petitioner's opening brief. We referenced the issue briefly in our brief in footnote. I think it's page 15 of our brief in footnote 6. We did mention that. And the petitioner has not argued that, nor has the petitioner filed a reply brief, nor did the petitioner mention that. So your position is it's been waived? It's been waived. Okay. But that would be the decision we'd have to make. And I understand you have a more than credible argument regarding that. But on the face of it, the statement by the BIA was unequivocal, not just that he was a citizen or is a citizen of China, but that the basis for that decision, despite the evidence otherwise, is that his lawyer made that statement. Well, and waiver aside, those concessions of the attorney are binding. It depends. It depends. Absent egregious circumstances, which are not present here. But even so, the petitioner in this case declined to designate a country for removal when given the opportunity by the immigration judge. And that was on, I think, page 92 of the record. The petitioner was given an opportunity to designate a country of removal, declined to designate, and the immigration judge then designated China, consistent with the admissions of counsel. Here's my problem. I fully understand the waiver problem. It was not waived. In the ordinary way of looking at it, it was waived here because they didn't raise it to us. But we've got a problem. Part of it's in the I.J. I.J. starts out, responded as a male native and citizen of China. That's on page 2, A.R. 79. And then at the very end, on the last page, I.J. writes, the court notes that he's a refugee from Vietnam. He's not a citizen of China. I think the first one's boilerplate. I don't know. The I.J. was on automatic pilot. But it's pretty clear that he's not a citizen of China. And when you try to remove this guy to China, China's not going to accept him. So what are you going to do? That ultimately gets to him. No, excuse me. So I think you've got an order that's not going to work. So if you actually want to remove him, you better get an order that removes him to Vietnam where he's a citizen. And I think, Your Honor, this takes us to the statute, which actually provides for alternative countries of removal in the event that the original country designated in the order is unwilling to accept the petitioner or for other reasons that removal to that country doesn't work out. But you have to establish as a matter of law that that, and I don't know what it is. And you have the experience, and I don't. But I understand he was born in Vietnam, but that doesn't mean necessarily he was a citizen. Because I don't know what the citizen. Well, so he has two Chinese parents. He was born in Vietnam and lived there for a year, according to the record. And then if you look, for example, at his father's naturalization certificate, his father is actually designated as a national of China and not of Vietnam. So he has two Chinese parents, one of whom is a lawful permanent resident here in the United States, the other of whom is a United States citizen at this point. But they were both nationals of China, even though they were living in Vietnam. They were ethnic Chinese and living outside of China. And then ultimately they returned to China with the petitioner who lived there for the rest of his life after his first year in Vietnam. So following up on Judge Fletcher's question, so we have a decision by the BIA. We're to uphold it. The BIA says he is a citizen of China. What do we do? If he's not, what happens? If he's not, as a practical matter, what would happen? More than a practical matter. As a matter of law, what happens? So if he's not actually a citizen of China, if you look at 8 U.S.C. section 1231b2 and 8 CFR section 241.15, DHS has broad latitude to actually select the country of removal. Sounds like they've already selected. And they have. I mean, effectively. Maybe they selected the wrong one. And if it turns out that it is the wrong one, I think there are 30 days for China to decide that they aren't unwilling to accept him. And then there are a whole bunch of different considerations that can be considered in order to determine which would be the secondary. Can Vietnam refuse to accept him? Vietnam could refuse to accept him as well. And then what? So the regulations and the statute provide that you can return an individual to countries based on whether they're nationals or citizens or a bunch of other different things. And ultimately, I mean, if nobody was willing to take him, he would still be removable as a matter of law. I mean, it's just that. We give him a little raft and let him drift? I mean, what do we do? No, I mean, I think he would be in limbo here in the United States. Yeah, but limbo doesn't mean. But wouldn't it make more sense for you and for everyone to have it remanded,  Ultimately, he's removable. Ultimately, he's removable. There's nothing to really remand for. The determination of which country he can be removed to is within the discretion of the Department of Homeland Security. And it's also never been raised or briefed or challenged at any point. No, it hasn't been determined. The BIA says, we understand the statelessness issue, and we determine he's a citizen of China. It may be wrong, but it's not been raised in front of us. I don't think there's anything we can do about it. And you may end up having a problem, but it's not. But it won't be the court's problem. The removal order still stands. The removal order is effective. He's still removable in that he's conceded over and over again. That statement by the BIA, that finding that he is a citizen of China, is irrelevant? Is it relevant even if it's inconsistent or it's clearly erroneous with respect to the decision made by the IA? I see I'm out of time, Your Honor, but if I may answer your question. It's not that the statement is irrelevant. It's that, at the end of the day, if it ends up being the case that they're unable to remove him to China, there are procedures in place to allow him to be removed to a country where he would be accepted. Well, that's a good question, and I'll be done. If, in fact, you can read the decision of the BIA as that being a factor for their decision and their decision on whether or not to allow the waiver, if that was a factor, and it seems to me as I read it, it looks like it's a pretty strong factor, that I don't know why they would make that statement unless it was relevant to the very issue they had. They simply made the statement in order to clarify because the immigration judge on page 1 of his decision or her decision and page 11 of her decision had said two things that were inconsistent. And so the board determined that the second thing that the immigration judge said about the petitioner being a stateless refugee from Vietnam was clearly erroneous because it was unsupported by actual evidence in the record beyond an errant statement. Beyond the testimony. Well, beyond the testimony of the petitioner, but at the end of the day his counsel had already conceded at that point that he was a native and citizen of China. And it wasn't an outrageous conclusion to reach, given that his immigration proceedings were held in Mandarin, his parents were both ethnic Chinese. But the issue of the country to which he may or may not be removable doesn't have anything to do with the marriage fraud issue, does it? No, it's totally unrelated. It's a separate issue. It was not considered as a positive or negative factor. It was just a matter of tying the loose ends up. Okay. Thank you very much. Thank you. Now, let's be extremely generous. We'll give you 36 seconds, which will bring you up to a full minute. I'd just like to, if I may, just very briefly target the decision, the Supreme Court's decision in Inez versus Yang that's been raised, I think, in both parties' briefs. And that was a seminal decision that up until that point, this Court had been essentially espousing Petitioner's position that you can't consider the initial marriage fraud as a negative factor. But the Supreme Court said yes. Thank you, Judge, yes. Not to jump in with both feet. We acknowledge that they do say that, but I'd like to distinguish that, because they say that you can consider it, but the factors in Yang maybe allow you to understand why they came to that decision, because they were so egregious there. There were two sham divorces. The Supreme Court even cited in its statement of the record there were other factors, although they don't lay what they were. This was well beyond just and counsel has set forth the government's position that this is a complex fraud. But in the scheme of these things, it really isn't. It's really a simple fraudulent marriage, fraudulent petition, that's it. It's not very complex. It went off quite a little while, and he put in a lot of fraudulent evidence to support the fraud. But no, it's not very complex. It's just one flat-out lie. There's a bona fide marriage, and it wasn't. After another. Well, two years, Judge. And after that filing of the 751, CIS sat on it for seven years, and nothing else happened. So thank you. Thank you. Thank both sides for your arguments. Ye versus Sessions submitted for decision. The next case on the argument calendar this morning, I may or may not be pronouncing this correctly, Alabed versus Crawford.
judges: W. Fletcher, Tallman, Silver